Dear Ms. Frederick:
You have requested an opinion of the Attorney General concerning the authority of the Town of Many to enter into a long term lease with option to buy property located outside the city limits of Many to be used as a recreational park/public gun club. You also want to know if this type of expenditure would be considered a proper use of public funds. You provided our office with the following factual information:
The Town of Many is in a mostly rural parish, Sabine. Most residents enjoy outdoor recreation, particularly hunting and fishing. Many is home to an annual skeet and sporting clays event that draws a substantial crowd but is held on private property as a private event. Recognizing that shooting sports are popular among residents of the area, Mayor Freeman has taken on a project to construct a public skeet range. Such a range presents unique challenges for a municipality since the location necessarily must be rural and remote from a safety and noise pollution standpoint. Therefore, the range will need to be located outside the incorporated town.
. . . .
The plans for the range are that it would be open to the public, operated by the Town on a fee for use basis. The fees will be structured to allow the range to become self sufficient and revenue neutral. The concept has been well received by the community, particularly educators and the scouting community. Special events *Page 2 
will be scheduled to allow students, as well as adults, to form competitive teams for shooting events at the range. In addition, the range would be available for hunter education courses which are mandatory for our young people to obtain a hunting license. Of course, the facility will be open to the general public during normal operating hours.
In addition, Sabine Parish is home to Toledo Bend Lake which, along with Hodges Gardens, brings a significant tourism base to the area. The tourists, though, generally spend little time or money in the Town. The range, in addition to its benefits as a recreational facility, would serve as a stimulus to commerce in the Town. Many of the resort facilities in the area host various groups for meetings and conventions, etc. They have expressed interest in having a shooting facility available as an additional amenity for guests. These resorts are geographically fairly distant from the Town. Local retailers, restaurants, etc. should realize a benefit in having the tourists come into the Town of Many from the Lake and Gardens. The sport requires its participants to purchase supplies which include ammunition, safety glasses, ear protection, etc. which are available at local retailers.
The facility will be operated much like a park with specified operating hours. From an expenditure standpoint, the start up costs are expected to be less than $25,000.00 (which is less than the cost of constructing a single tennis court.) Operational costs will be self generated by fees charged participants.
Because this type of transaction would involve an expenditure of public funds, it is necessary to examine your question in light of Article VII, § 14 of the Louisiana Constitution of 1974. La.Const. art. VII, § 14 seeks to prevent the gratuitous alienation of public funds and property and provides, in pertinent part, as follows:
Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
In Board of Directors of the Industrial Development Board of the Cityof Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizensof the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (the "Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis, which was set forth in City of PortAllen. v. Louisiana Mun. Risk Mgmt. Agency, Inc.,439 So.2d 399 (La. 1983), and articulated a new standard of review governing La.Const. art. VII, *Page 3 
§ 14(A). The new standard provides that La.Const art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated."Cabela's, 938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, § 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. The Cabela's standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
Applying the Cabela's test to the expenditure in question, we believe that the Town of Many has the requisite authority to enter into a long term lease with option to buy property located outside of the city limits of Many for use as a recreational park/gun club. The Town of Many operates as a Lawrason Act Municipality.[1]
La.R.S. 33:361 provides with respect to municipal powers as follows:
A. Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, and authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercise any power and perform and function necessary, requisite, or proper for the management of its affairs not denied by law.
As can be seen from the above referenced statute, municipalities operating under the Lawrason Act have the authority to exercise any power and perform and function for the management of its affairs which are not denied by general law and the Constitution. Moreover, a review of the relevant statutory and constitutional provisions reveals no prohibition against the Town of Many purchasing land or entering into a long term lease for land located outside of the city limits of Many, for the purpose of a recreational park/public gun club that is *Page 4 
expected to stimulate local commerce.[2] To the contrary, the Louisiana constitution encourages assistance to local industry.See La.Const. art. VI, § 21.
La.Const. art. VI, Section 23, which governs acquisition of property, provides the following:
Section 23. Subject to and not inconsistent with this constitution and subject to restrictions provided by general law, political subdivisions may acquire property for any public purpose by purchase, donation, expropriation, exchange or otherwise.
Pursuant to La.R.S. 51:1201, municipalities are authorized to promote the development of industry, trade, and commerce within and for their respective jurisdiction and to associate with one or more parishes, municipalities, or port authorities for the purpose of promoting industry, trade and commerce within the area of the several political subdivisions joined together or associated for this purpose. "Parishes, municipalities, and port authorities may appropriate and expend public funds in the furtherance of the promotion of industry, trade and commerce ___" La.R.S. 51:1201(C).
Therefore, we believe that the expenditure at issue could serve a valid public purpose which comports with the governmental purpose for which the Town of Many has legal authority to pursue. Specifically, the gun club will provide a recreational component as well as, potentially, benefit commerce and businesses located in and around the Town of Many and the tourism industry in the Sabine Parish region. You did not provide our office with a copy of the proposed lease or sale agreement. Once the Town of Many has a draft of the lease or sale agreement, it should be reviewed for a determination of whether Bond Commission approval is required. Assuming Many receives the property at or below the fair market value; the expenditure as a whole does not appear to be merely gratuitous; and the Town of Many has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for its expenditure, the expenditure should be considered a proper use of public funds, and it should not amount to a prohibited donation under La.Const. art. VII, § 14.[3]
An additional concern for the Town of Many, should it decide to purchase or lease property outside of the city limits, is that La.R.S. 33:4716 limits the police power of the Town of Many over property owned in another parish. The statute, *Page 5 
which governs jurisdiction over real property owned by a municipality or parish located within another municipality or parish, provides as follows:
Whenever any municipality or parish . . . owns real property wholly within the territorial limits of another municipality or parish and not contiguous to the territorial limits of the owning parish or municipality, the municipality or parish in which the real property is located shall exercise the police power and have jurisdiction of the real property.
The municipality or parish in which the real property is located may go upon the property for the purpose of policing it, making arrests, and confine any person charged with crime in the jail of the parish or municipality. All offenses committed upon the real property shall be subject to the jurisdiction of the courts of the parish or municipality in which the property is located.
La.R.S. 33:4716.
If the property selected for the recreational park/gun club is located outside of the city limits of Many, it may be subject to different ordinances and zoning requirements of the other jurisdiction. The only circumstance in which a municipality or parish's police power and jurisdiction over the property is not severely limited is when the property is contiguous to the territorial limits of the owning parish. Thus, the Town of Many may want to consider entering into an intergovernmental agreement with the parish in which the property is located. An intergovernmental agreement of this nature would allow for the extension of the police power of the Town of Many beyond its territorial limits. See La.R.S. 33:1324.
We trust that this information sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
With Best Regards,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By:__________________________ Angelique Duhon Freel Assistant Attorney General
JDC:ADF
[1] The Town of Many was incorporated by a Special Legislative Charter derived from Act. No. 43 of the Acts of the General Assembly of the State of Louisiana on April 3, 1877. La.R.S. 33:321 through 33:463, the Lawrason Act, was adopted by referendum and effective January 3, 1996, and it supersedes former provisions of the Charter of Many.
[2] This determination is consistent with a previous opinion of our office, wherein it was determined that a certain municipality could purchase property located outside of its corporate limits for industrial inducement purposes. See La. Atty. Gen. Op. 93-754.
[3] The facts provided to our office indicate that the start up costs for the recreational park/gun club are relatively minimal and that the operational costs will be self generated by fees charged to the participants.